Filed 4/25/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B311019 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA107213) |
| v. | |
| OBED ESTRADA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Allen J. Webster, Jr., Judge.  Affirmed.

Rudolph J. Alejo, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Amanda V. Lopez and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Obed Estrada appeals from an order denying his petition for resentencing under Penal Code section 1170.95.[1] A jury previously convicted Estrada of one count of first degree murder. We affirmed that conviction in an unpublished opinion. (*People v. Estrada* (Nov. 28, 2011, B226963) [nonpub. opn.].)

After the passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.), Estrada filed a petition for resentencing under section 1170.95. Section 1170.95 was enacted as part of the legislative changes effected by Senate Bill No. 1437 and became effective January 1, 2019. (Stats. 2018, ch. 1015, § 4.) The trial court denied Estrada's petition, finding that Estrada was not eligible for relief as a matter of law because the record demonstrated he was convicted as an aider and abettor. We agree and affirm the order denying Estrada's petition for resentencing.

## BACKGROUND[2]

In 2010, a jury found Estrada guilty of one count of first degree murder with a gang enhancement. (§§ 186.22, subd. (b)(1)(C); 187, subd. (a).) The jury found not true allegations that Estrada personally and intentionally discharged or used a

---

[1]  Undesignated statutory references herein are to the Penal Code.

[2]  The facts regarding the underlying conviction in this section are taken from our prior unpublished opinion. (*People v. Estrada*, *supra*, B226963.) Because we set forth the facts pertaining to Estrada's underlying conviction in that opinion, here we provide only those facts directly relevant to his section 1170.95 petition.

firearm.  The trial court sentenced Estrada to a total prison term of 50 years to life.  Estrada appealed, and we affirmed.

In March 2019, Estrada filed a petition for resentencing pursuant to section 1170.95, declaring he was not the actual killer, did not act with intent to kill, and was not a major participant in the felony or did not act with reckless indifference to human life.  The trial court appointed counsel for Estrada, and both parties submitted briefing.

In January 2021, the trial court held a hearing and denied Estrada's petition without issuing an order to show cause, after finding that Estrada did not meet his prima facie burden under section 1170.95.  The trial court found that nothing in the record reflected that Estrada was prosecuted under a natural and probable consequences theory.  The court also noted that the felony murder doctrine was not relevant to Estrada's case. The court found that Estrada was convicted under an aiding and abetting theory, and that Estrada acted as a "backup" or "security" in this "classic aider and abettor case."

Estrada timely appealed.

## DISCUSSION

### I.  Governing Law

On January 1, 2019, Senate Bill No. 1437 took effect " 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)  Senate Bill No. 1437 amended sections 188 and 189 of the Penal Code and added section 1170.95, which

3

provides a procedure for individuals convicted of murder who could not be convicted under the law as amended to retroactively seek relief. (*Lewis, supra,* 11 Cal.5th at p. 957; *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).)

Section 1170.95 created a three-part eligibility test: (1) the defendant must have been charged with murder by means of a charging document that allowed the prosecution to proceed under a theory of felony murder or under the natural and probable consequences doctrine, (2) the defendant must have been convicted of first or second degree murder, and (3) the defendant could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 effectuated by Senate Bill No. 1437. (§ 1170.95, subd. (a).)

A petition for relief under section 1170.95 must include a declaration that the petitioner is eligible for relief based upon meeting these three requirements, the superior court case number and year of conviction, and a statement as to whether the petitioner requests the appointment of counsel. (§ 1170.95, subds. (b) (1) (A)-(C).) "Where the petition complies with [section 1170.95,] subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief." (*Lewis*, *supra*, 11 Cal.5th at p. 960, citing § 1170.95, subd. (c).)

If the court determines the petitioner has made a prima facie showing of eligibility for relief, it must issue an order to show cause. (§ 1170.95, subd. (c).) If the parties do not stipulate that the petitioner is entitled to relief at that point, then the court must hold a hearing and vacate the murder conviction if the prosecution fails to prove that the petitioner is ineligible for relief beyond a reasonable doubt. (§ 1170.95, subd. (d).)

## II. Estrada Is Ineligible for Relief as a Matter of Law

Estrada argues that the trial court erred because the record establishes that he may have been convicted of first degree murder under a natural and probable consequences theory. We disagree. The record establishes that Estrada was convicted of first degree murder as an aider and abettor with intent to kill, and he is therefore ineligible for resentencing under section 1170.95. (See *Gentile, supra,* 10 Cal.5th at p. 848 ["Senate Bill No. 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought"].)

First, as we previously held, the record establishes that the jury instructions "ensured that the jury would only find Estrada guilty of first degree murder, even as an aider and abettor, if it concluded he acted willfully and with intent to kill . . . ." (*People v. Estrada, supra,* B226963 at p. 17.) Accordingly, to find Estrada guilty of first degree murder, which the jury did here, it necessarily found that he acted with intent to kill, not merely that murder was the natural and probable consequences of a nonhomicide crime he committed. The natural and probable consequences doctrine was amended by Senate Bill No. 1437 precisely because it allowed a factfinder to impute malice based solely on participation in a nonhomicide crime, which Senate Bill No. 1437 changed to require actual malice. (See *Gentile, supra,* 10 Cal.5th at p. 845 [until the enactment of Senate Bill No. 1437, "when a person aided and abetted a nonhomicide crime that then resulted in a murder, the natural and probable consequences doctrine allowed him or her to be convicted of murder without personally possessing malice aforethought"].) Because the changes in Senate Bill No. 1437 to the natural and probable

5

consequences doctrine do not apply to those who act with malice in aiding and abetting, the trial court's denial of Estrada's petition was appropriate here. (See *Gentile, supra*, 10 Cal.5th at p. 848.)

Second, the trial court never instructed the jury on CALCRIM Nos. 402 or 403, which contain the natural and probable consequences doctrine. Estrada concedes this fact. Instead, he argues that because the trial court provided to the jury a bracketed portion of CALCRIM No. 400, this bracketed instruction, coupled with statements by the prosecution in the closing argument, which Estrada characterizes as a "natural and probable consequences theory of first-degree murder," could have led a jury to find him guilty of first degree murder on a natural and probable consequences theory.

The Bench Notes to CALCRIM No. 400 provide in relevant part: "When the prosecution is relying on aiding and abetting, give this instruction before other instructions on aiding and abetting to introduce this theory of culpability to the jury." It goes on to state: "If the prosecution is also relying on the natural and probable consequences doctrine, the court should also instruct with the last bracketed paragraph." (Judicial Council of Cal., Crim. Jury Instns. (2022) Bench Notes to CALCRIM No. 400.) This bracketed paragraph reads: "Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first

6

crime." (*Ibid.*)[3]  The People do not dispute that this bracketed paragraph was given to the jury.

The Bench Notes to CALCRIM No. 400 further instruct that after CALCRIM No. 400 is given, "[d]epending on which theories are relied on by the prosecution, the court should then instruct" the jury on either (1) "CALCRIM No. 401, Aiding and Abetting: Intended Crimes" for "Target Crimes," or (2) CALCRIM Nos. 402 or 403 for "Natural & Probable Consequences Doctrine (Non-Target Crimes)," and that the latter is appropriate when "the prosecution's theory is that any of the crimes charged were committed as a natural and probable consequence of the target crime . . . ." (Judicial Council of Cal., Crim. Jury Instns., *supra*, Bench Notes to CALCRIM No. 400, emphasis omitted.)

Here, only CALCRIM No. 401—regarding aiding and abetting liability—was given to the jury.  The record establishes, and Estrada concedes, that the prosecution never argued the trial court should give CALCRIM Nos. 402 or 403 because they are required under the Bench Notes when proceeding on a natural and probable consequences theory.  (Judicial Council of Cal.,

---

[3]  The version of CALCRIM No. 400 given here reads in full: "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime.  I will call that person the perpetrator.  Two, he or she may have aided and abetted a perpetrator, who directly committed the crime.  [¶]  A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator.  [¶]  [Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime.]"  (CALCRIM No. 400.)

7

Crim. Jury Instns., *supra*, Bench Notes to CALCRIM No. 400.) Moreover, given our prior holding that the jury instructions, taken as a whole, required the jury to find that Estrada acted with intent to kill in order to find him guilty of first degree murder, even under an aider and abettor theory, we do not find that the bracketed language alone is sufficient to find that the jury was instructed on a natural and probable consequences theory. (See *People v. Estrada, supra*, B226963 at p. 17.)[4]

Our Supreme Court's analysis regarding a prior version of CALCRIM No. 400 and its interplay with CALCRIM No. 401 is determinative here. In *People v. Johnson* (2016) 62 Cal.4th 600 (*Johnson*), the jury was instructed on an old version of CALCRIM No. 400 providing that: " 'A person may be guilty of a crime in two ways. One, he may have directly committed the crime. I will call that person the perpetrator. Two, he may have aided and abetted the perpetrator, who directly committed the crime. A person is *equally guilty* of the crime whether he committed it personally or aided and abetted the perpetrator who committed it.' " (*Johnson, supra*, 62 Cal.4th at p. 638, citing former CALCRIM No. 400 (Aug. 2009), italics added.) The court held that where CALCRIM No. 401 is also provided, "there was no reasonable likelihood the jurors would have understood the 'equally guilty' language in former CALCRIM No. 400 to allow

---

[4] Multiple unpublished decisions addressing section 1170.95 have held that giving the bracketed language in CALCRIM No. 400, when unaccompanied by 402 or 403, does not constitute instructing on a natural and probable consequences theory. We are apparently the first court to say so in a published decision.

8

them to base defendant's liability for first degree murder from the mental state of the actual shooter, rather than on defendant's own mental state in aiding and abetting the killing." (*Johnson*, *supra*, 62 Cal.4th at p. 641.) Here, where the "equally guilty" language was no longer present in the version of CALCRIM No. 400 provided to the jury, there is even less of a possibility that the jury could have imputed Estrada's liability for first degree murder from the mental state of the actual shooter. Applying *Johnson*, Estrada is ineligible for resentencing as a matter of law because the jury was instructed on CALCRIM No. 401.

Moreover, where jury instructions regarding aiding and abetting liability directly mentioned the natural and probable consequences doctrine, and our Supreme Court stated that the "instruction concerning the natural-and-probable-consequences doctrine actually was not required," it held the error harmless because the prosecutor never requested instructions identifying and describing the target offense, such as the instructions in CALCRIM Nos. 402 and 403, and the prosecutor argued to the jury that the defendants intended to commit all the charged offenses, so there was no reasonable likelihood the jury misunderstood or misapplied the law. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 183–184 (*Letner and Tobin*)[5]; see also

---

[5]     In *Letner and Tobin*, the court instructed the jury: " 'One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating, but *he is also liable for the natural and probable consequences of any criminal act* that he knowingly and intentionally aided and abetted.' " (*Letner and Tobin, supra,* 50 Cal.4th at p. 183, italics added.)

9

*People v. Rivas* (2013) 214 Cal.App.4th 1410, 1433–1434 ["Our Supreme Court has observed that when the parties make 'no reference to the "natural and probable consequences" doctrine in their arguments to the jury, it is highly unlikely that the jury [will have] relied upon that rule . . .' (*People v. Prettyman* (1996) 14 Cal.4th 248, 273)"].)  Accordingly, while here the inclusion of the bracketed language in CALCRIM No. 400 was erroneous, the error was harmless because, as in *Letner and Tobin*, the prosecution never requested the instructions in CALCRIM Nos. 402 and 403, and the prosecution argued that Estrada intended to commit the charged offenses.  As we previously held, "[w]e are not persuaded by Estrada's argument that the jury may have disregarded CALCRIM Nos. 520 [First or Second Degree Murder With Malice Aforethought] and 521 [First Degree Murder] as applying only to the shooter, and not Estrada.  The instructions referred specifically to the defendant, not a principal, and informed the jury what the People had to prove as to the defendant.  There was only one defendant in this case, Estrada.  We assume the jury followed the instructions rather than disregarding them."  (*People v. Estrada, supra,* B226963 at p. 17.)

Finally, Estrada's claim that specific language in the prosecution's closing argument "was, at its essence, an instruction on the natural and probable consequences theory of first-degree murder" is unpersuasive.  Estrada relies on language that, on its face, instructs the jury on the intent he was required to possess to be found guilty of the second element of aider and

10

abettor liability in CALCRIM No. 401.[6]  The prosecution told the jury:

"Element no. 2, the defendant knew the perpetrator intended to commit that crime. Gang members commit crimes together.  He walked up with the shooter knowing the shooter had a gun.  His own admissions and conduct tells us he knew what was the game plan.  How do we know he knew something was going to happen at the time of the confrontation.  He is standing right next to the shooter. . . . And he participates in that confrontation with challenging Mr. Ricardo Chavez, where are you from.  Knowing what happens after, where are you from, violence is likely to occur."

Estrada argues that this "likely to occur" language shows that the prosecution operated under a theory of natural and

---

[6]    CALCRIM No. 401 provides:
"To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:
1. The perpetrator committed the crime;
2. The defendant knew that the perpetrator intended to commit the crime;
3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;
AND
4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.
Someone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."  (CALCRIM No. 401.)

11

probable consequences.  But the prosecution was arguing the second element of CALCRIM No. 401; specifically, that Estrada knew his co-gang member intended to kill the victim once they confronted him.  This "likely to occur" language during argument did not convey to the jury that they could convict on a natural and probable consequences theory.

In sum, the record shows Estrada was convicted as a direct aider and abettor, and is thus ineligible for section 1170.95 relief.

**DISPOSITION**

The order is affirmed.

**CERTIFIED FOR PUBLICATION**


HARUTUNIAN, J.*


We concur:


GRIMES, Acting P. J.


STRATTON, J.

_____

\*     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.